Case number 20-3737 William Powell Company versus National Indemnity Company at all. Arguments not to exceed 15 minutes per side. Mr. Garner, you may proceed for the appellant. Good morning, your honors. Richard Garner on behalf of the appellant, One Beacon Insurance Company. Can you hear me okay? Yes? Okay. I would like to reserve two minutes for rebuttal. Thank you. By way of introduction, this is an interlocutory appeal. The question before this court is whether or not section 26 F of the restatement second of judgments bars normal application of claim preclusion in this case under Ohio law. We submit to the court that the answer to that is no. There are two cases that we'll talk about today. One is the state court action. The other is this case, the federal action. We submit to the court that both cases arise out of one occurrence, same transaction, which is One Beacon's defense and indemnity of thousands of asbestos claims filed against William Powell across the country and defended and indemnified under 13 primary and excess insurance policies issued by One Beacon. It is undisputed that the underlying asbestos claims and policies in both actions are the same. The state action was filed originally in 2011. Originally, it was just a declaratory judgment action involving various coverage issues. But by 2018, it was limited down to two breach of contract claims under which William Powell was seeking over a million dollars worth of damages for these, the handling of the asbestos claims against One Beacon. That went to trial in the fall of 2018 for a month. In 2019, a final judgment issued. Importantly, in that final judgment, there was no express reservation allowing William Powell to split its claims between this case and the federal and the state case. This action, the federal action, was filed in 2014, three years after the state action was filed. It involved breach of contract and bad faith claims against One Beacon, at least in pertinent part. There were some other claims and parties which are no longer pertinent to our discussions today. Again, the same underlying asbestos. The operative complaint for purposes of claim preclusion is the second amended complaint in state court. Is that your position? That's correct. Okay, because if it was the original D.J. action, that would be a problem, right? The declaratory judgment does not give rise to claim preclusion. There's claim splitting in Ohio with D.J.s all the time, right? That's not exactly clear, but I would agree with you. It would be a much more difficult situation for us if it was a breach of contract. The only reason I bring that up, Judge Nalbandian, is if we look at the case that we supplemented yesterday, which is this court's recent decision from February 19th, 2021, in the Moore v. Hiram Township case, that was a case where under Ohio law, this court applied the Raw case, which we rely upon, and basically said that in the zoning appeal, you had to bring your damages plans at the same time and apply claim preclusion. I don't know if that will extend so far as to determine- Okay, well, that would be, I will take a look at it. I haven't looked at it yet. Just my own experience, people file declaratory judgments in Ohio all the time, and then they use them later to file breach of contract actions. But I guess what I'm getting at is, in 2014, when the federal complaint was filed, the operative complaint in state court did not have a breach of contract claim, right? And then by 2017, there's a breach of contract claim that's made in state court. And I'm just that. I take it that's the complaint that led to judgment in state court? Correct. Okay. What do we do with the fact that the court of appeals has now remanded some of that case, and then you all are, I guess, going to go up to the Supreme Court or try to- I mean, the finality has essentially been conceded in this case. I assume we just take that on its face and don't pay attention to what the court of appeals did? Yeah. At footnote seven of our brief, page eight, we actually address this issue. The pendency of William Powell's appeal, or our appeal in this case, does not alter the effect of claim preclusion. This court found that in Libertarian Party of Ohio versus Houston, which is cited there, as well as state court decision, Cawley versus Lutheran Medical Center, which we have cited there. So I think the takeaway from this, Your Honor, is win, lose, or draw, I guess you couldn't draw, but win or lose, the outcome is done. The case is final. And the one thing that I would talk about is with respect to the operative complaint, I think the issue here is the operative judgment. This case went to judgment on to the state action. Let me be clearer in my studies and pronouns. The state action went to judgment on two breach of contract claims. And what William Powell is seeking to do is to split its claims, its breach of contract claims, and its bad faith claim, which is part of the same transaction and occurrence under this court's decisions in Raw and Hamilton. Counselor, the question in the state case was coverage, right? The question in the state case was breach of contract, Your Honor, that's what went to judgment. But the questions were whether there was coverage under the contract, right? Correct. Same issues as in the federal case. How does that relate to the bad faith claim in the federal court? Because under the Grava case, under the restatements approach, what we do is we do an occurrence or transaction test. And so under those circumstances, this court is found on multiple occasions, both the Raw and the Hamilton case, that the bad faith claim arises out of the operative facts. This is not just a situation where this court's two decisions say that. If you look at our brief at footnote, our reply brief at footnote five, this is the weight of Ohio law on this issue. It's also the weight of national law on this issue as we set forth in our brief at footnote nine. So this is something which is not some novel concept, although this court may not have dealt with, this panel may not have dealt with it before. This is a well-established rule across the country and in this circuit, which establishes that the bad faith arises out of the same occurrence in the same transaction as the brief. I mean, the one case that seems to be closest on point is Geiger. And Judge Hendon just rejects that argument, doesn't she? Actually, Geiger case is an incorrect statement and outlier under Ohio law. If you look at Geiger, they actually apply the Norwood test, although they cite to the Grava test and they apply the Norwood test, which was a very different statement that was there. But it's interesting, Judge, now Bannon, we look at Geiger and you read the facts, you got a paragraph three of Geiger. The first thing that you realize is that Geiger is a case where the underlying action was dismissed with prejudice because it was settled and then a bad faith claim later. Now, Geiger, I agree, is a negative outcome for us, but it's the only case and all the cases that we have cited in both which is favorable to William Powell on this issue. So Geiger involves basically a third partying in or bringing a claim against the insurance coverage in the underlying loss against the insurance company in the underlying lawsuit, right? So there's an accident, the plaintiff sues, whatever, then they bring the insurance company in an amended complaint. Do you view that amended complaint? Was that a deck? Was that essentially a deck action or was that just, was that a breach of contract action? It was a breach of contract action on a UMUIM claim, as I recall, your honor. And I want to turn there very quickly on Geiger because what happened was, is there was an arbitration clause. Ultimately, there was an arbitration that took place and then the cases were settled, all the claims, including the claims against the tort fees and the case was dismissed in Geiger. But when you go back and you look at Geiger's analysis, even the first district itself in the Whitaker versus Jones case, which was after Geiger, comes to a different result. In the Whitaker versus Jones case, you had the insurer's demand for reimbursement from the insured being barred by the insurer's failure to bring the claim in an earlier lawsuit. So I think we have to view Geiger as an outlier because there's nothing like it anywhere under Ohio law and perhaps not too many places in the country. But did that case you're citing, did that involve a bad faith claim and a coverage claim? No, it was an assurance claim. I guess, would you agree though that there are times, let's say I file a deck action for coverage or maybe even a breach of contract. I don't know that you've mishandled my claims yet. I mean, under Rule 11, I can't plead that you screwed up or that you did something nefarious until I have some reason to believe it. And then when we get into discovery and I take your depo and it turns out that you admit or whatever, I got a smoking gun, whatever, I amend my complaint and say, okay, I got a bad faith claim now. But I may not know that at the time, right? I mean, how do I fit that together? I think there's two things we need to unpack there, Your Honor. The first one is when we talk about DJs, they're sui generis. And that's the reason why when you started off with the because we're talking about a creature of statute that goes different than a regular common law claim. When we're talking about a breach of contract claim, you can't split your claims. The law is clear across the country. So if you bring a breach of contract claim, you may find later on that there's bad faith and be able to amend to do that. But remember, we're not talking about an abstraction here. We're talking about a sequence of events that actually took place. 2011, they filed the DJ. By 2018 though, it's a pure breach of contract. They know at the time that they do this, that they have a breach of contract and a bad faith claim for the same claims, the same policies pending in the federal court. Because they had filed, by 2014, they had made the bad faith claim in federal court. Correct. You're saying that by 2018 or 2017, they knew when they amended their complaint that they had a bad faith claim and should have put it in that second amended complaint in state court? That's absolutely correct. Okay. Then why, I guess this leads to the question about why doesn't, let's assume all that's true, then why doesn't the exception in restatement 26 apply? Because there was some strangeness with whether that federal claim was going to go forward at the time and all the stuff that was going on there. 26F, three things I want you to remember. We have it on page 15 of our brief, the language is there, and there's three things to take away from 26F that we need to pay attention to. The first one is that there must be an extraordinary reason, not just some possibility. There must be an extraordinary reason and the restatement states that it's going to be the rare case, very small category of cases, and the restatement gives examples of the kinds of cases, penal custody cases, divorce cases, child custody, civil commitment of the mentally ill, and a final judgment with a fail to yield a coherent disposition. None of those are close here. Certainly also when you add that to the fact that it's William Powell's burden under 26F to show that by clear and convincing evidence, nothing even close here. Moreover, your honor, when we look at what the requirement is under 26F, there are prerequisites before you get there. It just what the court says is that you have to comply with sections 78 to 80, strike that, what the restatement says, you have to comply with sections 78 to 80, and that basically gives William Powell three options. Number one, file a motion in the state action, which never took place. Number two, file an independent action, which never took place. And then number three, if neither of those is available to file a motion in the federal district court, which again, never took place, they made no effort whatsoever to comply with the prerequisites of 26F. Clearly, we need something like 26F to allow us to avoid draconian outcomes by plain preclusion. We don't want to have a law of the Medes and the Persians that can never change based upon the circumstances. But this is not a case that is even close to those kinds of cases. This is a garden variety damages case in which we have one side to try to play both sides of the street. And once they went to judgment on one of those cases, they were done. They can't come back to the federal court now and say, now we want to do it again in this case, because we weren't happy with the outcome. So I would just say that those are consistent. There's a number of other arguments that they raised in the 22nd that I have left before rebuttal. I will say that those have been waived. They were never raised in the trial court. And even if they weren't waived, we've laid out in detail why the 26A and the 26B arguments are not there. There was no consent or acquiescence by one beacon, and there was no express reservation by the state court to allow claim splitting. I'll reserve the rest of my time. Thank you. Thank you. Should I proceed? Yes, please. Good morning. May it please the court. David Hein on behalf of the Appalachian William Powell Company. For the reasons set forth in our brief, we respectfully request the court affirm the trial court's decision, and pardon me, deny one beacon's motion to dismiss. Before I get into the reasons why that's the case, why res judicata doesn't apply, and why the exceptions do apply if res judicata's elements were satisfied, I think there's a conceptual issue that I'd like the court to understand. And that is that this case and the relief that one beacon seeks is completely unlike any case that has ever happened in the United States. And the relief that they seek has never been afforded by any court in the United States. One beacon repeatedly asks this court to believe that this is a garden variety res judicata case. And every single case that one beacon cites applying res judicata is confronted with the exact same procedural posture. Case A is filed, litigated to conclusion, then case B is filed. And one beacon attempts to take this case and jam it into the analysis that those courts apply. But in doing so, they're trying to take square peg and put it into a round hole, because that is not at all what is going on in this case. Here we have two cases that were pending simultaneously for five years, actively litigated in two different courts with the express blessing of the federal court in two written decisions and more implied blessings than we can count in both courts. Is that extraordinary? Why? I guess I don't understand. We have cases filed in state court and federal court all the time. And isn't the rule, whoever gets the first judgment gets preclusive effect under whatever the rules are? It's just a race to judgment, isn't it? Unless there's some abstention doctrine or whatever that somebody implies. Your Honor, I don't believe that that is the law in terms of race to judgment. And I don't believe that there's a single case that one beacon has cited where that has been applied. I believe, in fact, every instance where cases were proceeding simultaneously adopted, even if they found that the elements of res judicata applied, adopted an exception, because that's really not what res judicata is designed to prevent. And that is exactly why Judge Szilard said, look, we don't even need to deal with the elements of res judicata. We can skip right to the exceptions at the end and say, this isn't going to apply because this procedural posture is so extraordinary and is unlike any other case that is applied res judicata. So it is going to set aside. So which of the cases, what cases most similar? I think the reality, Your Honor, that the short answer to that question, there aren't any cases that share the same procedural peculiarities as ours. However, I think that the most similar is probably the Nolfi decision from Ohio or the Calderon-Rosado decision from the First Circuit. Both of those involved cases that had simultaneous track claims that were acknowledged by the courts. I believe in Nolfi, there was even a similar Colorado River extension analysis. One of the cases was partially stayed. And then the second case went to trial. I say the second case, and to be more precise, I believe it was actually the first state court case that went to trial. The federal case was partially stayed. And then after the trial in the state court case, the defendant had tried to invoke res judicata and the federal court said, no. Pardon me, the state court said, no. It's just not the analysis that res judicata is designed to prevent. It's not the harassment. I thought the res judicata was supposed to prevent claim splitting, like the inefficiency of bringing separate claims in separate forums. And you have a complaint in 2017 that has reached a contract and you know the bad faith facts are there because you filed it in 2014. Why wouldn't you just put it into the same action? I mean, isn't that would bring it or your honor. Go ahead. I apologize. I think that what res judicata is designed to prevent is not simply playing splitting, but or it is playing splitting, but those claims that are being split have to arise out of the same transaction or occurrence. Mr. Garner said that both the state court and the federal court case were to determine whether there was coverage. The reality is that's not true of either of these cases. The state court case was addressing not whether there was coverage. Coverage was stipulated to. It was the extent of coverage and how coverage would be allocated. The only facts that were at issue was the language of the policy itself. And then to a lesser extent, Powell's conduct from 2001 to 2011 in terms of what it did to preserve its right to allocate under the Supreme Court of Ohio's decision in Goodyear. Conversely, in the bad faith case, the only thing that is at issue is what one beacon did from 2011 to the present and how it managed its claims. There is no overlap. The state court trial involved four primary witnesses were Powell's CFO, Jeff Thompson, Powell's former coverage attorney at Taft, Tom Hill, and two experts that addressed allocation. The witnesses in this case will be the local defense attorneys and the National Coordinating Council that one beacon hired to defend Powell in asbestos claims from 2011 to the present. The documents that were at issue in the state court case were the claims, pardon me, the policies, and then correspondence relating to, again, Powell's efforts from 2001 to 2011 to preserve its right to allocate. Whereas in this case, the documents that will be at issue are not the policies. There's no dispute as to the language of the policies in this case. Rather, it's the documents that pertain to the underlying asbestos claims and one beacon's handling of those claims from 2011 to the present. There is no overlap at all. And that's why we were able to have a four-week trial in the state court case without mentioning anything about this case. And that's why nothing that has happened in the state court case for the past decade on our three trips to the Supreme Court and back has altered the direction of this case in any regard. But wait, let me ask this question. Sure, you could litigate the contract claims in state court without mentioning any of the actions or common nucleus of operative fact with respect to the bad faith claims, but is the converse true? That is, can you litigate the bad faith claims in federal court? I mean, they arise out of the actions with respect to coverage under those contracts, right? So the converse doesn't seem to be true. If I understand Your Honor's question, I think that the way that the courts have treated this, the Sixth Circuit recently decided in Checkers v. City of Dublin that when Ohio courts are looking at res judicata, they are looking for a common factual occurrence. And that's why every single case that one beacon cites, applying res judicata comes out of a car accident or a fire or a theft. There is a finite point in time. It is more than simply the existence of the contract that creates the common nucleus of operative facts. It's more than that. And that's why the restatement states that in order to find that there's a common nucleus of operative facts, such that the cases arise out of the same transaction or occurrence, you have to look for the convenient trial unit. And there is no convenient trial unit here simply because the relationship remains the same. Because when you look at the conduct that's at issue, we're dealing with two completely different timeframes, among other things. Everything that was issued in the state court case really stopped in 2011. Everything that's at issue in this case begins in 2011. And to respond to Judge Nalbandian's question about what the operative complaint was, I believe that this court's precedent in raw, which one beacon relies upon, actually makes very clear that the operative complaint is the first complaint, not the second. And in that case, actually reversed the judgment with regard to bad faith claims as it pertained to conduct that post dated the filing of the first complaint. But even if one beacon wants to argue that the second amended complaint is the operative complaint, that really leads us then to the exceptions. Because at no point after the filing of the second amended complaint, did one beacon ever say a word about claim splitting. Instead, it voluntarily chose to proceed with both cases. And this was addressed, although one beacon says that this was not preserved, and that it was waived in the trial court below. That's not true. This very point was addressed during the oral argument on the motion to dismiss when Judge DeLotte on page 57 of the transcript noted that one beacon knew there were claims here, and Willem Palen knew there were claims here, and the state court judge knew there were claims in federal court. Everyone was operating under the assumption that the dispute between the parties was operating on two tracks. And Mr. Garner conceded that point, and further went on to say, we looked at that and said, well, let's just see what happens. And on page 60, he went further and said, oh, that's why we waited. Why is that? Maybe they're waiting to see if they win. I don't know. I mean, why is that consent to? How does that equate to like consent to claim splitting as opposed to just, OK, we all know what's happening. I mean, you knew it was happening. You didn't amend your state court complaint to add the bad faith. They knew what's happening. They just let the case go on. I mean, there's no consent, is there? There is, Your Honor. And this was set forth both in the restatement and in the Supreme Court of Ohio's decision in Shabby Chell, where the Supreme Court of Ohio said that if a party invokes a defense like res judicata, the court has an obligation to scrutinize that party's conduct to see if it raised the defense at its first opportunity to do so. Mr. Garner, on behalf of one beacon, conceded that they did not. They waited a year and a half to see if they could exploit a judgment, even though these cases were proceeding simultaneously for five years. They just wanted to see which one ended first so that they could cut off the other. Counsel, let's go back. Counsel, let's just explore that for a second and look at the timing. I think your opponent takes the position that it wasn't the first complaint. It wasn't the first. December of 2017, Your Honor. And when did they raise the res judicata defense? June of 2019, Your Honor. A year and a half later, after we had proceeded through extensive summary judgment briefing. When was the trial verdict? March of 2019, Your Honor. So why is that not? The trial actually took place. Why is that not the operative? I mean, you don't have a res judicata argument until you have a judgment, right? No, Your Honor. But if the objection was to claim splitting, and this is what Shabby Chell was is what needs to be objected to. It's the idea that we're proceeding on separate tracks. If the party has an issue with proceeding on separate tracks, it needs to raise that because there are procedural mechanisms to bring the cases together. And this is precisely what Nolfi addressed, Gansk, Supervan, Calderon-Rosato, Your Honor. That's exactly what this is about. That's why the concept of simultaneous litigation is at odds with res judicata. Because if you have two cases pending, then you either have an instance where a party raises an objection to the split claims, and that's addressed, or they don't raise it until it's too late, and then res judicata isn't applied. That's why OneBeacon cannot cite for this court a single case where res judicata is applied to simultaneous cases. It's conceptually at odds with the doctrine of res judicata. I know that I'm running out of time here, and unless the court has any questions, I want to very quickly address two things. One, Mr. Garner said that Geiger is bad law and is at odds with Ohio law. That's actually incorrect. Geiger is good law. It relies on Norwood and Graba, which are both good law in Ohio. Graba was only overruling Norwood on one particular point that wasn't at issue in Geiger. And this court, in its talismanic properties versus city of Tipp City decision in 2018, actually cited Geiger with approval as an Ohio decision that involves two cases arising out of this different transaction or both. Geiger is both unpublished and that you don't have a unified court system in Ohio, so Geiger can't bind anybody else. It's unpublished, and even if it were published, it wouldn't bind the other Ohio courts of appeal. Is that a very good indication of what the Ohio Supreme Court would do? Well, Your Honor, I think that that's a fair point. I think that it is still a good indication because it is hand in glove with the other Ohio appellate courts, both Colelli and Goodville, the other two Ohio cases that one beacon cites actually address this, unlike Whitaker. They both find that the bad faith claim can proceed and is not barred by res judicata. Now, in Colelli, it ultimately bars the second action because of a release that was executed in the first, but it specifically finds that the bad faith claim does not arise out of the same transaction or occurrence as the breach of contract claim, and that's exactly what Goodville found as well. The one final point I will make as my time is expiring here is that the 26F procedural point that Mr. Garner has raised was not raised in the court below, and it is ironic that he argues waiver with regard to our arguments but doesn't acknowledge it with regard to that. Thank you, Your Honors. Thank you. Rebuttal? All right, let me make sure I'm on. Can you hear me, Your Honors? Yes. Great. A couple things. Number one, we filed our motion to dismiss in 2014 in the federal action based upon Colorado River abstention doctrine, which, for Your Honors, one of the reasons why we argue that is because we believe that whichever case went to judgment first would be preclusive on the first, and we asked for that. Not only did we do that, but we filed a motion for reconsideration afterwards, at which time Judge DeLotte actually stayed the breach of contract claims, and Judge Larson, there's breach of contract claims pending in the federal action as well as in the state action, the same breach of contract claims, and we were actually granted stay of those breach of contract claims, and in addition to that, when Judge DeLotte ruled on our motion this time with the 26F, she also found, again, that the actions were parallel and that the federal action should be stayed until the state action is over, and obviously one of the reasons to do that is because one or the other will have preclusive effect on the other. Now, after the motion... I'm sorry, counsel, you just lost me. When she said they were parallel, that's when she stayed the contract but not bad faith? And bad faith. She stayed both of them, and when she ruled, when she sent it to this court... We also, you know, asserted the affirmative defense of race judicata after our motion to dismiss was denied, and that was in 2014 or early 2015 because we knew this day was coming. We knew that they were going to try and do something, and I want to make clear about this. Judge Nalbandian, when you and I had our discussion about declaratory judgment, I am not conceding the fact that a declaratory judgment action will not bar a subsequent breach of contract or bad faith. I'm just saying that's not what went to judgment in this case. In fact, if you look at the Kaleli case, that's the case where an insurer's failure to raise a bad faith claim as a counterclaim to an insurer's D.J. was barred bad faith in a subsequent action, so you do have Ohio law which suggests that, and then finally, if I can just say this, let's be very careful with what we say about stipulations here. There was no coverage stipulation on either the state action or the court action. There were 13 different policies here with different arguments that were raised for them, and so I appreciate trying to condense everything down into just a few minutes, but there was no simple stipulations about coverage or so forth in this case. There's great overlap between the two cases in terms of evidence and so forth, and we thank the court for its